# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESCOTT COMPANIES, INC., | Case No. 10cv0107 BTM(BLM) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| MT. VERNON FIRE INSURANCE COMPANY, | |
| Defendant. | |

Defendant Mount Vernon Fire Insurance Company ("Defendant" or "Mount Vernon") has filed a motion to dismiss the First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted. For the reasons discussed below, Defendant's motion is **GRANTED**.

## I. FACTUAL BACKGROUND

On September 15, 2005, Prescott Companies, Inc. ("Prescott") entered into a commercial lease of premises located at 5966 La Place Court, Suite 170 in Carlsbad, California. (FAC ¶ 4.) The lessor was Property Acquisition Partners LP. (Id.) Cognac Campus LLC ("Cognac") succeeded to Property Acquisitions Partners LP's interest in the property and lease. (Id.)

Mount Vernon issued a CGL policy of insurance (the "Policy") to Prescott for a twelve-

1  month term commencing on July 1, 2006. (Ex. 3 to FAC.) Cognac is named as an additional
2  insured pursuant to an additional insured endorsement.        On April 20, 2007, Linda A.
3  Mayer, an employee of Prescott, slipped and fell while on the premises.

4  In August 2007, Mayer filed a workers' compensation claim with the Workers'
5  Compensation Appeals Board ("WCAB"), alleging that she sustained injury arising out of and
6  in the course of employment as a result of a slip and fall at the place of her employment.
7  (Def. RJN, Ex. A.) In March 2008, Prescott and its insurance carrier, Zenith Insurance
8  Company, settled Mayer's claim for the sum of $35,000 (in addition to $14,424.33 in medical
9  expenses previously paid). (WCAB Order Approving Compromise and Release, Def. RJN,
10 EX B.)[1]

11 On June 23, 2008, Mayer filed a personal-injury lawsuit (the "Underlying Action")
12 against Cognac in the San Diego Superior Court. (Mayer Compl., Ex. 4 to FAC.) Mayer
13 alleged that she was walking on the finished stone walkway just outside the main entrance
14 doors to Prescott when she fell because the walkway was wet and slick. (Mayer Compl. ¶¶
15 12-13.)[2]  Mayer alleged that she "was on said premises as a requirement of her employment
16 when the INCIDENT giving rise to this action occurred." (Mayer Compl. ¶ 24.) As a result
17 of the fall, Mayer suffered injuries to her lower back, hip, and arm. (Mayer Compl. ¶ 13.)

---

[1] Prescott objects to the Court taking judicial notice of Mayer's workers' compensation claim and the WCAB's Order Approving Compromise and Release. Prescott's objections are overruled. On a motion to dismiss, a court may take judicial notice of matters of public record outside the pleadings without converting the motion into a summary judgment motion. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Even though it is unclear whether Mount Vernon knew about the workers' compensation proceedings at the time the defense of the Underlying Action was tendered, the evidence is still relevant to the question of whether Mayer's claimed injury fell within the scope of the workers' compensation laws. As discussed, infra, the Court finds that to the extent Mayer's injuries "arose out of" or "in the course of employment" as defined under the workers' compensation laws, Mayer's claims against Cognac were excluded by the Policy's exclusion for employee bodily injury. Therefore, Plaintiff's objections on the grounds of relevance and lack of foundation are overruled. Furthermore, the documents are not inadmissible hearsay - they are not offered to prove the truth of Mayer's claim of injury (including how and in what context the injuries occurred), but, rather, to show that Mayer's claim was filed with the WCAB, and a settlement was approved by the WCAB. Federal Rule of Evidence 408 is inapplicable because the evidence is not being used for a purpose prohibited by subsection (a).

[2] A witness to Mayer's accident testified in deposition that she witnessed Mayer fall on the linoleum floor as Mayer was walking down the interior hallway toward the side exit door. (FAC ¶ 15.)

Mayer asserted claims of negligence and premises liability against Cognac.

On or about February 2, 2009, Cognac tendered its defense in the Underlying Action to Mount Vernon as an additional insured. (FAC ¶ 8.) Cognac also requested that Prescott defend and indemnify Cognac pursuant to the terms of the lease.

On February 6, 2009, Cognac filed a cross-complaint against Prescott for express, implied, and equitable indemnity, breach of contract, contribution and declaratory relief. (Def. RJN, Ex. C.) Prescott requested that Mount Vernon defend it against Cognac's cross-complaint.

Mount Vernon declined coverage and refused to defend Cognac and Prescott in the Underlying Action. (FAC ¶¶ 10-11, 18-20.)

On December 22, 2009, Cognac and Prescott settled the Underlying Action with Mayer. (FAC ¶ 21.) Pursuant to the settlement, Cognac paid Mayer $150,000 ($125,000 of which was from its insurer, Hartford) and Prescott paid Mayer $25,000. (Id.) On December 29, 2009, Prescott received an assignment of claims from Cognac and Hartford. (FAC ¶ 22.)

In the FAC, Prescott asserts claims on behalf of itself, Cognac, and Hartford. The FAC asserts the following seven causes of action: (1) breach of contract (brought by Prescott); (2) breach of contract (brought by Prescott as assignee of Cognac); (3) equitable contribution; (4) equitable subrogation; (5) breach of third party contract; (6) breach of the implied covenant of good faith and fair dealing; and (7) declaratory relief.

## II. DISCUSSION

Mount Vernon moves to dismiss the FAC on the ground that the Policy expressly excludes coverage of claims by employees injured in the course of their employment. As discussed below, the Court agrees that the Underlying Action was not covered by the Policy and Mount Vernon had no duty to defend Cognac or Prescott.

## A. Law Governing Duty to Defend Claims

The duty to defend is broader than the duty to indemnify. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993). The insurance carrier must defend a suit which *potentially* seeks damages within the coverage of the policy. Id. In other words, an insured need only show that the underlying claim *may* fall within policy coverage. Montrose Chemical Corp. of California v. Superior Court of Los Angeles County, 6 Cal. 4th 287, 300 (1993). To avoid the duty to defend, the insurer must prove that the claim *cannot* be covered. Id.

The duty to defend exists if the insurer "becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann, 4 Cal. 4th at 1081. The existence of a duty to defend does not turn upon the ultimate adjudication of coverage under the insurance policy, but, rather, upon those facts known by the insurer at the inception of the third-party lawsuit. Montrose, 6 Cal. 4th at 295.

## B. Bodily Injury Exclusions

The Policy includes the following exclusion:

**BODILY INJURY EXCLUSION - ALL EMPLOYEES, VOLUNTEER WORKERS, TEMPORARY WORKERS, CASUAL LABORERS, CONTRACTORS, AND SUBCONTRACTORS**

. . .

1. "Bodily injury" to any "employee," "volunteer worker," "temporary worker" or "casual laborer" arising out of or in the course of:

    (a) Employment by any insured; or

    (b) Performing duties related to the conduct of any insured's business;

. . .

3. Any obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury";

. . .

> This exclusion applies to all claims and "suits" by any person or organization for damages because of such "bodily injury," including damages for care and loss of services and any claim under which any insured may be held liable under any Workers' Compensation law.

The Policy also excludes: "Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."[3]

## C. Analysis

Prescott argues that the bodily injury exclusion for employees does not apply because, according to Mayer, she was leaving work to go to lunch when she slipped on the walkway. (Prescott's Opp. at 10.) Prescott contends that since Mayer was not performing her work at the time of her accident, she was not acting "in the course of her employment."

Nowhere in Mayer's Complaint does Mayer state that she was going to lunch when she had her accident. It is unclear to the Court if Mayer ever made such a claim and, if she did, whether Mount Vernon knew about it. However, even assuming Mayer was on her way to lunch when she fell, the Court finds that her injury arose out of her employment and was sustained in the course of her employment.

As an initial matter, the Court notes that the exclusion applies to the bodily injury of employees "arising out of **or** in the course of" employment. (Emphasis added.) Mount Vernon misquotes the exclusion as applying to injuries "arising out of **and** in the course of" employment. (Emphasis added.) Prescott also erroneously argues that the exclusion requires that the injury arise out of the employment **and** occur in the course of employment. (Prescott's Opp. at 10.)

An injury "arises out of the employment" if it "occur[s] by reason of a condition or

---

[3] It is unclear whether Mount Vernon contends that the workers' compensation exclusion *in and of itself* precludes coverage. To the extent Mount Vernon makes such an argument, the Court is not convinced. The exclusion applies to "Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Here, the obligations at issue are an obligation of Cognac to maintain a safe premises to lessees and their employees and an obligation of Prescott under the lease to indemnify Cognac. These obligations do not arise from workers' compensation laws even though they relate to an incident that was compensable under the workers' compensation scheme.

incident of [the] employment . . . ." Employers Mut. Liab. Ins. Co. v. Indus. Accident Comm'n, 41 Cal. 2d 676, 679 (1953). The employment and the injury "must be linked in some causal fashion." Maher v. Workers' Comp. App. Bd., 33 Cal.3d 729, 734 (1983). Prescott concedes that Mayer's injury "arose out of" the employment because she would not have been on the commercial property but for her employment with Prescott. (Prescott's Opp. at 10.) The Court also independently finds that based on the allegations in Mayer's Complaint, Mayer's injuries would not have occurred except for the fact that she was working that day. Mayer alleges that she "was on said premises as a requirement of her employment when the INCIDENT giving rise to this action occurred." (Mayer Compl. ¶ 24.) Mayer's injuries arose out of her employment. Therefore, the exclusion applies regardless of whether her injuries also occurred "in the course of" her employment. See Baker v. Nat'l Interstate Ins. Co., 180 Cal. App. 4th 1319, 1336 (2009) (explaining that because exclusion applied to property damage "arising out of 'your product' or 'your work,'" the policy advised and warned the insured that the hazard that was excluded was the hazard arising from *either* its products *or* from its work).

Even if the exclusion required both that the injury arise out of and be in the course of Mayer's employment, the Court would find that Mayer's injury was sustained in the course of her employment. Relying on West American Ins. Co. v. California Mutual Ins. Co., 195 Cal. App. 3d 314 (1987), Prescott argues that Mayer's injury was not sustained "in the course of her employment" because she was not performing her job at the time of the incident. Mount Vernon, on the other hand, points to cases such as North Atlantic Cas. and Surety Ins. Co. v. William D., 743 F. Supp. 1361 (1990) and Sinni v. Scottsdale Ins. Co., __F.Supp.2d__, 2009 WL 5127992 (M.D. Fla Dec. 18, 2009), which construe the phrase "in the course of employment" as having a broad scope that encompasses injuries sustained while the employee was engaged in activities incidental to or reasonably related to the employment.

Insurance contracts are contracts to which the ordinary rules of contractual interpretation apply. Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1265 (1992). If a term of an insurance policy is in any respect ambiguous or uncertain, "it must be

interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990). To determine whether coverage is consistent with the insured's objectively reasonable expectation, the court must "interpret the language at issue in context, with regard to its intended function in the policy." Bank of the West, 2 Cal. 4th at 1265. Language in a contract "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." Id. (internal quotations and citations omitted).

Upon consideration of the specific language of the bodily injury exclusion for employees, the Policy's inclusion of a worker's compensation exclusion, and the purpose of comprehensive general liability policies, the Court agrees with Mount Vernon that the phrase "in the course of employment" extends to injuries sustained while the employee was on the premises engaging in activities incidental to work, such as coming to work or leaving work. Where policies include a workers' compensation exclusion in addition to an exclusion for bodily injury to employees, courts interpret the latter exclusion with reference to workers' compensation law, which governs injuries sustained by employees "arising out of and in the course of employment" (Cal. Lab. Code § 3600). For example, in North Atlantic Cas & Surety, 743 F. Supp. at 1365, the court relied on workers' compensation law governing acts of "personal convenience" in holding that employees who used a restroom at work that contained a two-way mirror were injured "in the course of employment" within the meaning of the exclusion for bodily injuries to an employee. Similarly, in Northern Sec. Ins. Co., Inc. v. Dolley, 669 A.2d 1320 (Me 1996), the court, relying on workers' compensation case law, concluded that an employee who was injured while exiting a washroom on the work premises ten minutes before her shift was to begin was engaged in conduct falling within "the course of employment."

Taking into account the purpose of workers' compensation exclusions and exclusions for bodily injury of employees, it makes sense to construe the exclusion for bodily injury to employees as encompassing, at minimum, injuries that would be deemed to arise out of and

in the course of employment under workers' compensation law. A commercial general liability policy "is not designed to provide coverage for an employer's liability for injuries to its employees. Instead, the compliance of an employer with a respective jurisdiction's workers' compensation statute constitutes the full extent of an employer's liability for any injuries sustained by its employees, arising out of and in the course of their employment." Couch on Insurance 3d, § 129:10. To that effect, workers' compensation exclusions exclude claims covered by workers' compensation laws. California Practice Guide: Insurance Litigation, § 7:1874 (The Rutter Group 2010).

Exclusions for bodily injury to employees are even broader in scope than workers' compensation exclusions and may extend to bodily injury claims not covered by workers' compensation. California Practice Guide: Insurance Litigation, § 7:1875 ("Also excluded are bodily injury claims not covered by workers' compensation because the insured employer's acts were outside the normal risk of employment (e.g., violence or false imprisonment)."). In Sinni, 2009 WL at * 11, the court explained, "[A]n employer's liability exclusion for bodily injury to an employee 'arising out of and in the course of employment' encompasses claims that are potentially broader than workers' compensation obligations and may have only a limited causal relationship to employment."

Given that the exclusion for bodily injury to employees is meant to be *broader* in scope than the workers' compensation exclusion, a reasonable interpretation of the phrase "arising out of and in the course of employment" is that, at minimum, it includes injuries that would be deemed to "arise out of and in the course of employment" under workers' compensation law. This interpretation is reinforced by the following language in the exclusion itself: "This exclusion applies to all claims and 'suits' by any person or organization for damages because of such 'bodily injury,' including damages for care and loss of services and *any claim under which any insured may be held liable under any Workers' Compensation law.*" (Emphasis added.) The italicized portion of this language is broader than the language of the workers' compensation exclusion: the italicized language refers to any claim under which *any* insured *may be held liable* under the workers' compensation laws, whereas the workers'

compensation exclusion excludes an "obligation of the insured under a workers' compensation [law]."

Under workers' compensation law, an employee is in the "course of his employment" when he "does those reasonable things which his contract with his employment expressly or impliedly permits him to do." Maher, 33 Cal. 3d at 733 (internal quotation marks and citations omitted). Furthermore, "[t]he term 'employment' includes not only the doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where work is to be done." California Cas. Indem. Exch. v. Indus. Accident Comm'n, 21 Cal. 2d 751, 754 (1943). "If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance." Id. (quoting Bountiful Brick Co. v. Giles, 276 U.S. 154, 158 (1928)). See also Gutierrez v. Petoseed Co., Inc., 103 Cal. App. 3d 766, 769 (1980) (holding that injuries occurring on the premises of the employer during a regular lunch break arise within the course of employment as being incidental to such employment).

Even assuming Mayer was leaving the office for her lunch break when she slipped and fell on the premises, her injury occurred in the course of her employment. Indeed, Mayer obtained recovery against Prescott in workers' compensation proceedings. Thus, the exclusion for bodily injury to employees applies to this case and coverage is barred. See Sinni, 2009 WL at * 11 (holding that injuries sustained by the plaintiff-employee who slipped and fell on a walkway while leaving her employer's premises at the end of a workday, were excluded by the employee bodily injury exclusion).

The Court finds that West American, the case upon which Mayer relies, is distinguishable. In West American, the court held that the phrase "in the course of employment," as used in the policy's exclusion for employee bodily injury, should be construed narrowly as referring to "when the employee is working." 195 Cal. App. 3d at 323.

The court declined to look to workers' compensation law or respondeat superior case law in interpreting the phrase. However, it is unclear whether the policy in West American included a workers' compensation exclusion. The case discussed the exclusion for employee bodily injuries and an exclusion for business pursuits. No mention was made of a workers' compensation exclusion. Therefore, the Court does not find West American to be persuasive authority.

In conclusion, Mayer's injuries "arose out of her employment." In addition, Mayer sustained her injuries "in the course of her employment." Therefore, the exclusion for bodily injury to employees applies, and coverage is barred. Accordingly, the FAC is dismissed for failure to state a claim.

### III. CONCLUSION

For the reasons discussed above, Mount Vernon's motion to dismiss is **GRANTED**. The FAC is **DISMISSED** for failure to state a claim. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: April 14, 2010

Honorable Barry Ted Moskowitz
United States District Judge